# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 25 2020, 9:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Steven Mance,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 25, 2020

Court of Appeals Case No. 19A-CR-2223

Appeal from the Marion Superior Court

The Honorable Lisa F. Borges, Judge

Trial Court Cause No. 49G04-1504-F2-13079

**Najam, Judge.**

# Statement of the Case

Steven Mance appeals the trial court's order that he serve twelve years in the Department of Correction following the court's revocation of his placement on probation and in community corrections. Mance raises the following two issues for our review:

1. Whether the trial court abused its discretion when it ordered Mance to serve twelve years in the Department of Correction.

2. Whether the trial court expressed a desire for leniency but felt restrained by a misunderstanding of law when it ordered Mance to serve twelve years in the Department of Correction.

We affirm.

# Facts and Procedural History

On April 20, 2016, Mance pleaded guilty to criminal confinement, as a Level 2 felony. Mance admitted that, in committing that offense, he had used his victim as a shield or hostage during a S.W.A.T. situation in Marion County. In exchange for his guilty plea, the State dismissed a Level 2 felony allegation of kidnapping, a Level 6 felony allegation of resisting law enforcement, and a Class A misdemeanor allegation of resisting law enforcement. Mance's plea agreement called for a total sentence of seventeen years with any executed term capped at twelve years.

[4] In accepting Mance's guilty plea and sentencing him, the trial court noted as an aggravating circumstance Mance's criminal history, which included a prior Class D felony conviction for possession of cocaine and a prior Class C felony conviction for carrying a handgun without a license. Both of those prior convictions resulted in suspended sentences that Mance failed to complete successfully. Indeed, as an additional aggravating circumstance, the trial court also noted that Mance had "absconded from his home detention monitoring" when he committed the Level 2 felony criminal confinement. Appellant's App. Vol. 2 at 115, 135. The court then sentenced Mance to seventeen years, with five years executed in the Department of Correction, five years in the Marion County Community Corrections program, and seven years suspended to probation.

[5] Following the completion of his term in the Department of Correction, in June of 2018 Mance began his term on work release with the Marion County Community Corrections program. On November 30, Mance received a pass to leave community corrections to go to his place of employment and was due back at community corrections following the end of his shift. However, Mance did not return or otherwise communicate with community corrections. The State filed its notice of community corrections violation on December 1, and the trial court issued a warrant for Mance's arrest.

[6] Two-hundred and twenty-eight days later, the court's arrest warrant was served on Mance and he was returned to the custody of Marion County law enforcement. The State then filed a notice of probation violation, and the court

held a hearing on the two notices in August. At that hearing, Mance did not dispute that he had absconded from the Marion County Community Corrections program for 228 days, but he insisted that he had done so only because the mother of his daughter had been arrested, his daughter needed his care, and he thought that, if he communicated those facts to officers at community corrections, they would not be reasonable in responding to him.

[7] Mance's counsel then asked Mance if he had "pick[ed] up any new cases while [he] was out." Tr. Vol. 2 at 10. Mance initially responded, "[n]o charges," but when he was asked to repeat his answer, he said, "driving." *Id.* The court then interjected and asked what came of that offense, and Mance said he received "time served." *Id.* at 11. The court asked, "So you were convicted?" *Id.* Mance then said he pleaded guilty to an offense in Wayne County and that he "actually ha[s] been incarcerated since May the 19th." *Id.* at 12. The court again asked, "On a traffic case?" *Id.* Mance responded that he had been "waiting on Marion County. I got here on July . . . 17th or 18th." *Id.*

[8] The court and the attorneys then promptly looked up Mance's new Wayne County offenses and saw that, while he had be *in absentia* from the Marion County Community Corrections program, he had been arrested in Wayne County for possession of marijuana, false informing, and operating a motor vehicle without a license. On July 3, he had pleaded guilty to the marijuana and operation of a motor vehicle offenses while the false informing offense was dismissed. Mance had received a total sentence of twenty days but had remained incarcerated since May 30 on the Marion County arrest warrant.

[9] The State then asked the court to revoke Mance's placement and order him to serve time in the Department of Correction. Mance's counsel did not dispute the State's position—he instead asked the court to give Mance "a small, but reasonable, but significant, amount of time in the Department of Correction[] . . . [d]ue to the fact that he did, and I have to acknowledge, he did abscond and he did pick up a new conviction." *Id.* at 16. But Mance's counsel asked for a term in the Department of Correction below the full term because Mance "was working" and "was supporting his family . . . ." *Id.*

[10] The court revoked Mance's placement in community corrections and probation and ordered him to serve twelve years in the Department of Correction.[1] After the court announced its decision, the following colloquy ensued:

> [MANCE]: Also, Your Honor, I am upset with Community Corrections. . . . I was deemed appropriately fit and was supposed to be moved [to home detention] but the case manager I had, she never was there and wouldn't let anyone leave. I was only supposed to do only 90 days on house arrest and I was doing what I was supposed to do . . . .
>
> * * *
>
> THE COURT: Well, I don't know that that's the case, but I know that's what you think and I accept that. That may[ ]be the case. Your recourse is always to the Court. All right. I didn't

---

[1] Mance does not suggest on appeal that the court's order for him to serve twelve years in the Department of Correction, coupled with his original executed term of five years, is inconsistent with the terms of his plea agreement.

get any requests from you with regard to that. You have been gone too long[.]

[MANCE]: [Y]es, but . . . [my original attorney], he actually heard on my other stuff and was asking for the paperwork and like . . . .

THE COURT: [W]ell, here is the thing, you were gone too long.

[MANCE]: Your Honor, but I was going to work every day . . . . I had a letter from my job, saying that I was going to work every day, but I know it's not their job but they could have came to my job easily and arrested me [be]cause I was there.

THE COURT: Okay. I understand, but I made my ruling. Okay.

[MANCE'S ATTORNEY]: Thank you, Your Honor.

THE COURT: Yes[?]

[MANCE'S ATTORNEY]: May I approach?

THE COURT: Yes, you may.

([Mance's attorney] hands the Court agreed entry on credit time[.])

THE COURT: All right. I will show 266 days of credit plus 88 good time days and that is a total of 354 days of credit. *I am really hopeful that your good record while you have been at the [Department of Correction] will be something that they will take into*

*consideration toward your parole. So hopefully that will reduce the amount of time you are spending, okay?*

[MANCE]: Sure.

*Id.* at 17-19 (emphasis added). This appeal ensued.

# Discussion and Decision

### *Issue One: The trial court did not abuse its discretion when it ordered Mance to serve twelve years in the Department of Correction.*

On appeal, Mance first asserts that the trial court abused its discretion when it ordered him to serve twelve years in the Department of Correction. As our Supreme Court has made clear, placement on probation and community corrections is

> a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled. It is within the discretion of the trial court to determine [placement] conditions and to revoke [such placements] if the conditions are violated. In appeals from trial court [placement] violation determinations and sanctions, we review for abuse of discretion. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances or when the trial court misinterprets the law.

*Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013) (cleaned up).

According to Mance, the trial court abused its discretion when it ordered him to serve twelve years in the Department of Correction because he "left to take care of his daughter, whose mother was incarcerated, and continued to work to

support his family during his absence." Appellant's Br. at 6. Mance compares his being absent from community corrections for nearly two-thirds of a year to a "technical" violation or to having been gone only "for [a] short period of time." *Id.* at 7.

[13] We reject Mance's argument. First, Mance's isolated reading of the record does not account for the totality of his 228-day absence from community corrections. He spent approximately two months of those 228 days incarcerated. Mance does not suggest that he was fulfilling the role of a dutiful father from the Wayne County jail.

[14] Second, we agree with the State that Mance's colloquy with the trial court demonstrates more than one rationale for his absconding from community corrections. In the trial court, Mance stated that one reason he left community corrections was because he was "doing what [he] was supposed to do" and participating in home detention, for which he stated he had been "deemed appropriately fit," after his community-corrections case manager had failed to show up and give him formal permission to do so. Tr. Vol. 2 at 17. Thus, contrary to his argument on appeal, Mance's position to the trial court was not that he had absconded only to care for his daughter. He also asserted that he absconded because he thought he had a right to do so.

[15] Third, Mance does not acknowledge the fact that he has an established history of failing to successfully participate in probation and community corrections. Indeed, Mance committed the underlying criminal confinement in violation of

a prior placement on home detention. And, during his absence from community corrections here, he again committed new offenses.

[16] The trial court's order for Mance to serve his remaining twelve years in the Department of Correction was well within the court's discretion. Mance's argument on this issue is merely a request for this Court to reweigh the evidence that was before the trial court, which we will not do. We affirm the trial court's order for Mance to serve twelve years in the Department of Correction.

### Issue Two:  The trial court did not express a desire for leniency in ordering Mance to return to the Department of Correction.

[17] Mance next asserts on appeal that, in sentencing him, the trial court expressed a desire for leniency but felt restrained by a misunderstanding of law. Specifically, Mance relies on the following comment from the trial court at the end of the hearing:  "I am really hopeful that your good record while you have been at the [Department of Correction] will be something that they will take into consideration toward your parole. So hopefully that will reduce the amount of time you are spending, okay?" Tr. Vol. 2 at 18. According to Mance, the trial court's statement was an "expression for leniency" that the trial court, due to "an incorrect understanding of the nature of parole," appeared to believe it could not exercise. Appellant's Br. at 9. Mance emphasizes that "words matter." Reply Br. at 4, 5.

[18] Words do matter, and so does context. In context, the trial court had pronounced its ruling that Mance was to serve his remaining twelve years in the

Department of Correction. Mance then engaged the court in additional rationales as to why he thought the court should not enter that ruling, to which the court twice responded that Mance had absconded for "too long" and then additionally responded that the court had "made [its] ruling." Tr. Vol. 2 at 18. The court *then* made the statement in question.

[19] We think the context of the proceedings makes clear that the court's point in its statement was not that it actually desired a different ruling but that Mance's best path forward for less time in the Department of Correction was to be on good behavior while there. Nothing about that statement is legally erroneous or requires this Court to remand for clarification. We affirm the trial court's judgment.

[20] Affirmed.

Kirsch, J., and Brown, J., concur.